IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DENA C. VICKERS**                                                                    **PLAINTIFF**

**VS.**                                     **CIVIL ACTION NO. 4:07-CV-095-TSL-LRA**

**MICHAEL ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

THIS CAUSE is before the Court upon the [8] Motion for Summary Judgment filed by Dena Vickers [hereinafter "Plaintiff"] and the [10] Motion to Affirm Decision of the Commissioner filed by Commissioner Michael J. Astrue [hereinafter "Commissioner"]. Plaintiff appeals from the decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner opposes the motion and requests this Court enter an order affirming the final decision of the Commissioner. Having carefully considered the matter, the Undersigned recommends the decision of the Administrative Law Judge be reversed and remanded for the reasons set forth herein.

### Procedural Background

The Commissioner of Social Security denied Plaintiff's May 19, 2003, application for disability insurance benefits under Title II, and supplemental security income payments under Title XVI of the Social Security Act. In the application, Plaintiff alleged that she became unable to work on March 14, 2003, due to severe impairments, physical and mental in nature. (R. 73-78). This application was initially denied on August 25, 2003, and again upon reconsideration on October 31, 2003. A hearing was

1

conducted on January 19, 2007, by Administrative Law Judge (ALJ) Willie L. Rose. An unfavorable Notice of Decision was issued on February 20, 2007, finding that Plaintiff was not "disabled." A request for review of the ALJ's decision was submitted in April of 2007 to the Appeals Council. This request was denied on May 30, 2007, making the decision rendered on February 20, 2007, final. Plaintiff now appeals that decision.

## Facts and Medical Evidence

Plaintiff was born on May 12, 1961, and was forty-three (43) years of age in August of 2004, the date of the alleged onset of her disability. She is a high school graduate, and has past work experience as a clerk in a florist shop, a bakery and deli manager, a bookkeeper, a lab technician, a drive-in co-manager, an automobile salesperson, and an automated machine operator. The last position she held was as a clerk in a florist shop. Plaintiff's daily activities include cooking and other household chores. She gets assistance from her husband with vacuuming and moving items. (R. 197).

The medical evidence is described in extensive detail in the ALJ's decision and the parties' briefs, and will not be repeated in depth herein. As a general matter, Plaintiff's medical records reveal she suffers from degenerative disc disease of the lumbar and cervical spine, fibromyalgia, migraine headaches, right side carpal tunnel syndrome, post surgical release, mental depression, and a somatoform disorder. Her mental disorder appears to have been brought on by the death of her (14) fourteen-year-old son following a car accident in 1998.

A consultative psychological evaluation was conducted by Jan Boggs, Ph.D., in July 2003. (R. 196-199) Dr. Boggs characterized Mrs. Vickers as dysphoric and not

2

very sociable, though she reported she feels happy when she is around her grandchild and that "lots of things" still give her joy. (R. 197-198). Dr. Boggs opined that Plaintiff's pain, which was sometimes a nine or ten without medication, but could drop to a two or three, with medication, appeared to be exacerbated by her depression (R. 198). Dr. Boggs noted that Plaintiff "demonstrated the ability to understand directions and perform routine tasks, and is currently doing so in the context of her job as a florist." (R. 198). Dr. Boggs also reported that her remote memory was good, and that she did well on daily problem-solving situations. (R. 198).

In August 2003, Psychologist Sharon Scates, Ph.D., evaluated the impact of Plaintiff's depression and somatoform disorder, and prepared a mental Residual Functional Capacity ("RFC") assessment of Plaintiff. (R. 200-203). According to Dr. Scates, Plaintiff's depression and somatoform disorder resulted in a moderate restriction of activities of daily living, moderate difficulty in social functioning, and moderate difficulty in maintaining concentration, persistence, and pace. (R. 214). Additionally, Dr. Scates indicated that Plaintiff's ability to interact with the public, accept instructions, and respond appropriately to a supervisor's criticism was moderately limited; although, no significant limitation was found in her ability to get along with coworkers. (R. 200-201). Dr. Scates therefore concluded that Plaintiff could understand, remember, and carry out simple instructions; could maintain concentration and attention for two-hour periods; could interact adequately with

others; could adapt at a basic level; and, could complete a normal work week without excessive interruption from psychologically based symptoms (R. 202).[1]

## **Findings of the Administrative Law Judge**

Upon reviewing all the evidence, the ALJ issued a finding that Plaintiff was not disabled and therefore not entitled to SSDI benefits or SSI payments. The ALJ determined that while the record evidence established that Plaintiff suffered from severe impairments, she did not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.152 (d), 404.1525 and 404.1526). The ALJ further found that the opinion of the state agency consultant, Dr. Scates, was well supported and therefore entitled to great weight, and concurred in the finding that the claimant is capable of performing simple repetitive tasks or unskilled work. (R. 23). The ALJ therefore concluded that Plaintiff had the Residual Functional Capacity to perform light work that required no more than occasional stooping, kneeling, crouching, crawling, climbing, or balancing and performing simple repetitive tasks. (R. 19-22).[2]

---

[1] In December 2004, Plaintiff's rheumatologist, Dr. Pennebaker, discontinued Plaintiff's Prozac treatment and switched her to the anti-depressant, Cymbalta. (TR. 391-392). That same month, her neurologist, Dr. Doorenbos, relayed that Plaintiff had begun psychotherapy with a Dr. Allen. Notably, Plaintiff advises in her memorandum brief that Dr. Allen's records were not in evidence. (Plaintiff's Memorandum Brief, pg. 10). No explanation is provided as to why. Lastly, Plaintiff advises the Court that in March 2005, she reported experiencing panic attacks to Dr. Pennebaker.

[2] The ALJ additionally found that the "claimant has the residual functional capacity to lift/carry a maximum of 20 pounds occasionally and 10 pounds frequently; and stand/walk and sit for a total of 6 hours each during an 8 hour workday. . . . " (Tr. 19).

**Legal Authorities**

This Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." **Brock v. Chater**, 84 F.3d 726, 728 (5th Cir. 1996), *citing* **Carrier v. Sullivan**, 944 F.2d 243, 245 (5th Cir. 1991). The Fifth Circuit has defined substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." **Leggett v. Chater**, 67 F.3d 558, 564 (5th Cir. 1995), *citing* **Anthony v. Sullivan**, 954 F.2d 289, 295 (5th Cir. 1992). Any findings by the Commissioner that are supported by substantial evidence are conclusive. **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995).

A claimant's entitlement to disability benefits hinges on whether she can establish her inability "to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423 (d)(1)(A); **Bowling v. Shalala**, 36 F.3d 431, 435 (5th Cir. 1994). The Commissioner uses a sequential five-step approach to determine whether a claimant is disabled.[3]

---

[3] The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and, (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a), 416.920(a).

The burden of proof on the first four steps falls on the claimant. The burden of proof then shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that Plaintiff could perform. **Fraga v. Bowen**, 810 F. 2d 1296, 1301-02 (5th Cir. 1987). Once the Commissioner identifies suitable alternative employment, the burden of proof shifts back to plaintiff to prove that she could not perform the alternative work identified. **Id**. at 1302. Throughout the process, the ultimate burden of establishing disability remains with the plaintiff. **Hames v. Heckler**, 707 F. 2d 162, 165 (5th Cir. 1983).

### Statement of the Issues

Plaintiff asserts the ALJ's decision is not supported by substantial evidence for the following reasons:

- A. The ALJ failed to incorporate his findings of Mrs. Vickers' moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace into his mental residual functional capacity assessment **and** his hypothetical question to the vocational expert.

- B. As a result, the hypothetical question presented to the vocational expert did not provide a correct account of the claimant's work restrictions, making the ALJ's Step 5 finding that Plaintiff is able to perform light work unsupported by substantial evidence.

- C. The claimant's opportunity to cross-examine the vocational expert following the hypothetical did not cure the defective hypothetical question.

### DISCUSSION

**Whether the ALJ's Finding that Plaintiff Can Perform Light Work Is Supported by Substantial Vocational Evidence.**

Plaintiff's position that the ALJ's decision is not supported by substantial evidence centers around her belief that ALJ Rose concurred with the state psychologist's opinions that Plaintiff's depressive and somatoform disorders cause moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. That these were the findings of the state agency psychologist, Dr. Scates, is undisputed, and in fact, underscored by the Commissioner in his reply brief. It is therefore undisputed by either party that Dr. Scates made a determination that Plaintiff had moderate restriction of daily activities, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.

Plaintiff argues, however, that ALJ Rose failed to include her moderate difficulties in maintaining (a) social functioning and (b) concentration, persistence and pace in his assessment of Plaintiff's Mental Residual Functional Capacity, and, in turn, in the hypothetical question he posed to the Vocational Expert. The Vocational Expert uses the information provided in a hypothetical to determine whether there are any jobs Plaintiff is still capable of performing in the national economy. Concentration, persistence and pace are significant, Plaintiff argues, because they refer to Plaintiff's ability to sustain focused attention and concentration in order to timely and appropriately complete work tasks. (Plaintiff's Rebuttal Brief, pg. 7). Likewise, social functioning is significant in that it refers to Plaintiff's abilities to interact appropriately with the public and to accept instructions and respond appropriately to criticism from supervisors. (Plaintiff's Rebuttal Brief, pg.6). Plaintiff therefore concludes that the ALJ

could not rely on the vocational expert's testimony because the vocational expert was not presented with Plaintiff's limitations in these areas.

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff had the residual functional capacity to perform light work that required no more than occasional stooping, kneeling, crouching, climbing, or balancing and performing simple, repetitive tasks. (R. 19-22). This determination, Commissioner argues, is consistent with Dr. Scates's functional capacity assessment, and the ALJ's concurrence with Dr. Scates's opinion as to Plaintiff's mental RFC. (Tr. 21). As for the Vocational Expert, she was presented with a hypothetical question that included all of the functional limitations found in Plaintiff's RFC. (Commissioner's Brief, pg. 12). It would have been improper, the Commissioner suggests, for the ALJ to pose a hypothetical with broad terms like "moderate difficulty in social functioning and concentration and pace," and expect the vocational expert to determine Plaintiff's functional limitations based on these terms. (Commissioner's Brief, pg. 12). It is the ALJ's role to determine the RFC, not the vocational expert, and in this case, the vocational expert identified work existing in significant numbers in the regional and national economy that was compatible with Plaintiff's RFC. Lastly, the Commissioner maintains that "no medical source has indicated that Plaintiff's depression and somatoform disorder has resulted in limitations beyond limiting her to performing work involving the simple, repetitive tasks as reflected in ALJ Rose's RFC finding and in the hypothetical question he presented to the Vocational Expert." (Commissioner's Brief, pg. 13). Thus, the Commissioner concludes, the ALJ's decision should be affirmed.

8

**A. Mental Impairments**

The Undersigned has reviewed the ALJ's decision, the record evidence, and his discussion of Dr. Scates's psychological opinions regarding Plaintiff's mental impairments. In his memorandum opinion, ALJ Rose states the following:

> As for the opinion evidence, the DDS psychological consultant considered the claimant's mental impairments under Listings 12.04 and 12.07 and found moderate limitations in three out of the four areas of functioning evaluated under the "B" criteria of the revised mental listings. *Updated records show that the claimant is being treated with antidepressant medication prescribed by medical doctors and has not been prompted to seek professional mental health treatment.* Since there is no evidence of any significant worsening in her depression or somatoform disorder, the Administrative Law Judge finds that the opinion of the **state agency consultant continues to be well supported and therefore entitled to great weight.** The Administrative Law Judge **concurs in finding that the claimant is capable of performing simple repetitive tasks or unskilled work.**

(R. 21). (Emphasis added).

It is clear ALJ Rose expressly found that the state agency consultant's opinion is "well supported and entitled to great weight." (R. 21). It is less clear whether he adopted Dr. Scates's opinion in its entirety because he goes on to state in the next sentence that he "concurs in the finding that the claimant is capable of performing simple repetitive tasks or unskilled work." (R. 21). Implicit in this statement is that the ALJ does **not** concur with Scates's finding that Plaintiff has moderate abilities in the areas of social functioning, concentration, persistence, or pace.

The Commissioner contends in his brief that Dr. Scates's finding that Plaintiff has moderate difficulties in social functioning, and moderate difficulty in concentration,

9

persistence, and pace is consistent with the indication that Plaintiff can "perform simple repetitive tasks, or " unskilled work," [but] "cannot perform detailed tasks or follow detailed instructions." ( R. 21, 475; Commissioner's Brief, pg. 5). Plaintiff does not dispute this. (Plaintiff's Rebuttal Brief, pg. 5). However, as Plaintiff argues, a limitation to simple repetitive tasks does not necessarily address a moderate limitation in social functioning; and, as the Commissioner acknowledges, a moderate limitation in maintaining concentration, persistence and pace does not automatically equate to an ability to perform simple repetitive tasks. (Commissioner's Brief, pg. 11).

The Commissioner offers no reconciliation of what appears to be the ALJ's adoption of the state agency psychologist's opinions, with what appears to be his omission of her opinions that Plaintiff has moderate limitations in social functioning and maintaining concentration, persistence or pace. It is not entirely clear the Commissioner sees an imparity. For example, the Commissioner's contention in his brief that "no medical source has indicated that Plaintiff's depression and somatoform disorder has *resulted in limitations beyond limiting her to performing work involving simple, repetitive tasks*," overlooks a previous observation in the Commissioner's brief that "Scates indicated that Plaintiff's ability to interact with the public and accept instructions and respond appropriately to a supervisor's criticism was moderately limited. . . . " (Commissioner's Brief, pgs. 5, 13; R. 200-201).

The Undersigned is aware that there is an argument to be made that the ALJ's observations that the *"updated records show that the claimant is being treated with antidepressant medication prescribed by medical doctors and has not been prompted to seek professional mental health treatment;"* and, that *"no evidence of any*

10

*significant worsening in her depression or somatoform disorder*" was indicated, would suggest that the ALJ was not persuaded that Plaintiff had moderate difficulties in the areas he omitted. This is speculation, however, that lies beyond the scope of appellate review. The ALJ's decision is ambiguous on this issue. It is therefore the opinion of the Undersigned that this matter be remanded with instructions to the ALJ to clarify his findings with regard to the opinions of the state agency psychologist.

**B.     Hypothetical Question**

The Court has also reviewed the hypothetical posed to the Vocational Expert at the administrative hearing, which states as follows:

> Let's assume that we have a hypothetical individual who is the same age as the claimant, has the same vocational training and has the same work history. Let's assume further that that hypothetical did have the same education. Let's assume further that that hypothetical individual can lift and carry 20 pounds occasionally, ten pounds frequently, could stand and walk for six hours during an eight hour period, could only occasionally stoop, kneel, crouch, crawl, climb and balance. **Individual can perform simple repetitive tasks, cannot perform detailed tasks or follow detailed instructions**. With those restrictions, could such an individual perform any of the work that the Claimant can perform?

(R. 475).

It is clear the hypothetical did not include all of Plaintiff's purported limitations in social functioning and maintaining concentration, persistence and pace, as described by Dr. Scates. What remains unclear is whether this information was excluded because the ALJ did not concur in Dr. Scates's findings that there were such limitations. Until the record has been clarified on this issue, the Undersigned finds it

is premature to consider whether the hypothetical was defective, under controlling Fifth Circuit law.

The Fifth Circuit instructs that the hypothetical question must "incorporate reasonably all disabilities of the claimant recognized by the ALJ." **Bowling v. Shalala**, 36 F. 3d 431, 436 (5th Cir. 1994). The hypothetical question need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments. Additionally, the mere diagnosis of an impairment does not establish a disability. The impairment, rather, must create a functional limitation that affects the claimant's ability to work. **Hames v. Heckler**, 707 F. 2d 162, 165 (5th Cir. 1983). Thus, Plaintiff's contention that "binding Fifth Circuit case law requires that the hypothetical question posed to a Vocational Expert ***must relate with precision*** all of the claimant's impairments that the ALJ finds are supported by the record," is inaccurate. (Plaintiff's Rebuttal Brief, pg. 12). The hypothetical should reasonably incorporate the disabilities and the corresponding functional limitations of the claimant, as discussed below.

Recently, the Fifth Circuit found that the omission of Plaintiff's moderate concentration, persistence and pace limitations were not prejudicial when the functional limitations articulated in the hypothetical by the ALJ reasonably incorporated them. **Bordelon v. Astrue**, 281 Fed. Appx. 418 (5th Cir. 2008). (When the ALJ properly articulates the specific functional limitations in the hypothetical question posed to the vocational expert, the hypothetical is valid.) In **Bordelon**, the ALJ asked the vocational expert to assume an individual "who's 38 years old with approximately a seventh grade educational level, and . . . no past relevant work." **Id**. at 423. The

individual was limited to "lifting 20 pounds occasionally, 10 frequently, [and to] [w]alk[ing], standing, or sitting, two hours in an eight-hour day." **Id**. The ALJ went on to state: "The woman also would need a job with only rare public interaction, low stress, and simple, one-to-two step instructions." **Id**. The Fifth Circuit held the comments regarding "restrictions to rare public interaction, low stress, and one-to-two step instructions" reflect that the ALJ reasonably incorporated the plaintiff's moderate concentration, persistence and pace limitations. **Id**.

It is the opinion of the Undersigned that whether the ALJ's hypothetical in this case properly articulated the functional limitations caused by Plaintiff's mental impairments, is contingent on whether he concurred with Dr. Scates's opinions regarding Plaintiff's mental impairments, in whole or in part. Because the Undersigned finds the ALJ's opinion is ambiguous on this issue, this case should be remanded for further clarification.

### C. Plaintiff's Cross- Examination of Plaintiff's Expert

Lastly, the Court briefly addresses Plaintiff's contention that granting her the opportunity to cross-examine the vocational expert at the hearing did not cure the defective hypothetical. She asserts that **Bowling**, 36 F.3d at 431, is often misconstrued as holding that a hypothetical question is not defective so long as the plaintiff was permitted to cross-examine the vocational expert. Relying on **Boyd v. Apel**, 239 F.3d 698 (5th Cir. 2001), Plaintiff argues the Fifth Circuit has subsequently clarified this decision by holding that the claimant does not bear the burden to cure a defective hypothetical question posed by an ALJ on cross-examination. Plaintiff quotes the following from **Boyd**:

13

> . . . (T)he holding in **Bowling** stated only that an ALJ may not rely on a hypothetical without giving the claimant an opportunity to correct deficiencies in the question. It did not state that a party's failure to point out the problems in a defective hypothetical automatically salvages that hypothetical as a proper basis for a determination of non-disability.

**Id**. at 707, citing **Bowling**, 36 F.3d at 436.

**Boyd** is distinguishable from the present case, however. In that case, significant evidence concerning the plaintiff's mental impairments was not available to either the ALJ or the plaintiff until after the administrative hearing. **Id**. at 707. Thus, the Fifth Circuit's rationale in **Boyd** was that the plaintiff did not have a "fair" opportunity to correct the assumptions made in the hypothetical or to raise additional impairments. **Id**. In this case, however, the record was complete at the time of the hearing. Counsel for Plaintiff conducted an extensive cross-examination of the vocational expert, asking the vocational expert to consider Plaintiff's limited ability to sit and stand; Plaintiff's need to take two-hour breaks; Plaintiff's need to lie down at unpredictable intervals; and, the possibility that Plaintiff might miss more than three days of work a month. (R. 477-478). Significantly, counsel did not ask the vocational expert to consider Plaintiff's purported moderate difficulties in maintaining social functioning, and in maintaining concentration, persistence, or pace that were excluded from the ALJ's hypothetical.

## FINDINGS AND CONCLUSIONS

For all the above reasons, it is therefore the opinion of the Undersigned United States Magistrate Judge that Plaintiff's Motion for Summary Judgement be granted in part as set forth herein, and this case be remanded for further consideration and clarification

consistent with this opinion.  The Undersigned further recommends that Motion for Order Affirming the Commissioner be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  28 U.S.C. § 636; **Douglass v. United Services Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 27th day of February, 2009.

                                            S/Linda R. Anderson
                                 UNITED STATES MAGISTRATE JUDGE